UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JASON RAPOZA**, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>**ST. ANNE'S CREDIT UNION**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## CLASS ACTION COMPLAINT

JASON RAPOZA ("Plaintiff"), on behalf of himself and the Class of persons preliminarily defined below, states as follows:

### INTRODUCTION

1. Plaintiff brings this action on behalf of himself and a class of all similarly situated consumers against Defendant ST. ANNE'S CREDIT UNION ("St. Anne's" or "Defendant") arising from the its routine practice of assessing multiple insufficient funds fees or return charges ("NSF Fee") on a single item or transaction in violation of its contract with Plaintiff.

2. The relevant account documents detailing Defendant's policies at issue in this Complaint are the "Membership Account Agreement" (attached hereto as **Exhibit A**) and the "Fee Schedule for Consumer Accounts" (attached hereto as **Exhibit B**) (collectively, the "Account Documents").

3. Despite the clear language in the Account Documents, Defendant unlawfully assesses multiple NSF Fees on a single Automated Clearing House ("AHC") transaction or check.

4. The Account Documents state that only a single NSF Fee will be charged for a "check, pre-authorized transfer, or other debt activity presented for payment": "If we return the item without paying it, we may charge you a non-sufficient funds fee." However, Defendant's sole and undisclosed view is that a single check or ACH transaction originally rejected and returned for insufficient funds becomes a new, unique "item" subject to a second NSF Fee despite the fact *Plaintiff never requested a second transaction.* In no way is this disclosed to Plaintiff in the Account Documents.

5. Defendant breaches its contract with Plaintiff by charging more than one NSF Fee on the same item since the Account Documents only contemplate a single NSF Fee for a single transaction.

6. Defendant also breaches its duty of good faith and fair dealing by charging multiple NSF Fees for reprocessing the same item.

7. Plaintiff, and the Class, have been injured by Defendant's practices. As such, Plaintiff seeks to recover any and all damages, restitution and injunctive relief for Defendant's breach of contract and breach of the covenant of good faith and fair dealing.

8. With over 55,000 accountholders, Defendant's scheme to extract multiple NSF Fees on single transactions must be enjoined to prevent further damages and hardships.

## PARTIES

9. Plaintiff Jason Rapoza is a citizen of the state of Rhode Island.

10. Defendant St. Anne's Credit Union is headquartered in Fall River, Massachusetts and has over $900 million in assets across 55,000 accountholders. It has eight branches including Dartmouth, Fairhaven, Fall River, New Bedford, Somerset, and Swansea; and services counties in both Massachusetts and Rhode Island.

## JURISDICTION & VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Mr. Rapoza) is a citizen of a state different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

12. This Court has personal jurisdiction over the Defendant because Defendant's actions and omissions committed as pled in the Complaint occurred in this District and Defendant regularly conducts and/or solicits business in, and/or derives substantial revenue from, products and/or services provided to persons in this District and in Massachusetts.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

14. Pursuant to Defendant's Account Documents, when an accountholder lacks sufficient funds to pay a check, pre-authorized transfer, or other debt activity, Defendant may either return the *item*, or pay the *item* at its discretion. If the *item* is returned, as is the case here, Defendant reserves the right to charge a *single* NSF Fee.

15. Contrary to the Account Documents, Defendant regularly charges multiple NSF Fees on the same item or transaction.

16. This abusive practice is not universal in the financial services industry. Indeed, major banks like JP Morgan Chase do not charge multiple NSF Fees on the same item or

transaction when it is reprocessed. Instead, Chase charges one NSF Fee even if an item or transaction is resubmitted for payment multiple times.[1]

17. Defendant's Account Documents never disclose its abusive practice of charging multiple NSF Fees on a single item or transaction.

### A.   *Plaintiff's Experience.*

18. Plaintiff's account statements are replete with Defendant's abusive practice of charging multiple NSF Fees on a single item or transaction.

19. On January 9, 2019, Plaintiff wrote a personal check in the amount of $950.00.

20. On January 10, 2019, Defendant returned $950.00 to Plaintiff's account due to insufficient funds, and immediately charged Plaintiff a $27.00 Returned Item Fee.

21. Unbeknownst to Plaintiff, Defendant processed the same $950.00 check a second time on January 11, 2019.

22. On January 14, 2019, Defendant returned the $950.00 check a second time due to insufficient funds and charged Plaintiff a second $27.00 Returned Item Fee.

23. In other words, Defendant charged $54.00 in fees to process a single check.

24. Plaintiff understood this check to represent a single transaction according to the Account Documents. This makes logical sense because Plaintiff only wrote check #529 *one time*.

25. Defendant's abusive practice applied equally to ACH transactions as well.

26. On January 7, 2019, Plaintiff authorized a single payment of $180.00 to Geico.

27. On January 8, 2019, Defendant returned the $180.00 payment to Plaintiff's account due to insufficient funds, and immediately charged Plaintiff a $27.00 Returned Item Fee.

---

[1] As indicated by Chase's printed disclosures, even if an item or transaction is submitted multiple times by a merchant, "[Chase] will only charge you one Returned Item Fee for that item within a 30-day period." *A Guide to Your Account* (Nov. 17, 2019):
https://www.chase.com/content/dam/chasecom/en/checking/documents/clear_simple_guide_total.pdf

4

28.  Unbeknownst to Plaintiff, Defendant processed the same $180.00 payment to Geico a second time on January 10, 2019.

29.  On January 11, 2019, Defendant returned the $180.00 payment to Plaintiff's account a second time due to insufficient funds and charged Plaintiff a second $27.00 Returned Item Fee.

30.  In other words, Defendant charged $54.00 in fees to process a single transaction to Geico.

31.  Plaintiff understood the $180.00 payment to Geico to represent a single transaction according to the Account Documents. Indeed, even Defendant's system categorized the $180.00 payment to Geico as a single transaction because the account statement clearly indicates the second attempt (made without Plaintiff's knowledge) as a "RETRY PYMT."

**B.  *The Abusive Practices Alleged Herein Violate Defendant's Express Promises and Representations Found within the Account Documents.***

32.  The Account Documents outline the contractual relationship surrounding Plaintiff's relationship with Defendants and explicitly promises and represents how a single item or transaction will be processed—including what NSF Fees, if any, Plaintiff may incur.

33.  For example, the Account Documents state:

> **Non-sufficient Funds and Overdrafts.** If your account lacks sufficient funds available to pay a check, pre-authorized transfer, or other debt activity presented for payment, we may (1) return the *item*, or (2) pay the *item* at our discretion. If we return the *item* without paying it, we may charge you a non-sufficient funds *fee*.

See Membership Account Agreement, Exhibit A at 2 ¶ 17 (emphasis supplied).

34.  In other words, the Account Documents explicitly state a *single item* may be subject to a *single fee*. Despite this clear and explicit language, Defendant routinely, and regularly, assessed multiple NSF Fees on a single item or transaction even though Plaintiff only

5

requested payment one time. The Account Documents are devoid of any disclosure or indication that a *single* check, pre-authorized transfer, or debt activity is subject to *multiple* NSF Fees.

35. The Account Documents state Defendant will charge a single NSF Fee for a single insufficient funds' transaction of $27.00.

36. As alleged herein, Plaintiff only took a single action to make a single payment (or write a single check). Thus, per the Account Documents, Plaintiff may only be charged a single NSF Fee for a single item or transaction.

37. Taken together, the representations and omissions identified above convey to Defendant's accountholders that all submissions for payment of the same transaction will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Defendant disclose that each reprocessing of a check, pre-authorized transfer, or debt activity is a separate item subject to additional fees, nor do Defendant's accountholders ever agree to such fees.

38. Defendant's accountholders reasonably understand, based on the language of the Account Documents, that Defendant's reprocessing of a check, pre-authorized transfer, or debt activity are simply additional attempts to complete the original instruction for payment, and as such, will not trigger multiple NSF Fees. In other words, it is always the same item.

39. Banks like Defendant that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

40. For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf.

41. Defendant provides no such disclosure. In agreeing to charge Plaintiff one NSF Fee on a single item or transaction, and instead charging Plaintiff multiple NSF Fees for a single item or transaction, Defendant breached its agreement with Plaintiff.

    **C.    *The Abusive Practices Alleged Herein Beaches Defendant's Duty of Good Faith and Fair Dealing.***

42. Parties to a contract are required to adhere to the express conditions in the contract and to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretionary power is required to exercise that power and discretion in good faith and shall not do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract. This creates an implied promise to act in accordance with the parties' reasonable expectations. Thus, Defendant is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant had, and has, a duty to honor transaction requests in a way that is fair to its accountholders and is prohibited from exercising its discretion to gouge them with fees never disclosed or contemplated by the Account Documents. Here Defendant has provided itself numerous discretionary powers affecting its accountholders. But instead of exercising that

7

discretion in good faith and consistent with the reasonable expectations of its accountholders, Defendant abuses that discretion to take money out of their accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

43. Defendant exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other accountholders—when it defines "item" in a way that directly leads to multiple NSF Fees on a single item or transaction. Further, Defendant abuses the power it has over its accountholders and acts contrary to their reasonable expectations under the Account Documents. This is a breach of Defendant's implied covenant to engage in fair dealing and act in good faith.

44. Defendant's bad faith conduct was entirely outside Plaintiff's reasonable expectations of only expecting a single NSF Fee for a single item or transaction as opposed to Defendant's nondisclosed policy of charging multiple NSF Fees for a single item or transaction.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action, and each of his respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following class.

46. The "Class" is defined as follows:

*All St. Anne's Credit Union Accountholders in the United States who, during the applicable statute of limitations periods, were charged multiple NSF Fees on a single transaction.*

Plaintiff reserves the right to modify or amend the class definition as necessary.

47. Excluded from the Class is: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class members.

48. This action has been brought and may be properly maintained on behalf of each member of the Class under Federal Rule of Civil Procedure 23.

49. *Numerosity of the Class:* The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members based on the fact that Defendant has approximately $900 million in assets and currently discloses more than 50,000 accountholders.

50. Upon information and belief, Defendant has a database, and/or other documentation, of its customers' transactions and account enrollment. These databases and/or documents can be analyzed by an expert to ascertain which of Defendant's customers have been harmed by its practices and thus qualify as Class members. Further, the Class definition identifies unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class members through notice published in newspapers or other publications.

51. *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following:

    a. Whether Defendant violated its contractual relationship with Plaintiff and the Class by charging multiple NSF Fees for a single item or transaction;

    b. Whether Defendant breach its covenant of good faith and fair dealing with Plaintiff and the Class by charging multiple NSF Fess for a single item or transaction;

    c. The proper method or methods to determine and measure Plaintiff's and the Class' damages;

    d. The declaratory and/or injunction relief to which Plaintiff and Class is entitled to.

52.  *Typicality:* Plaintiff's claims are typical of all of the members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and all of the Class members are substantially the same because all of the relevant agreements between Defendant and its accountholders were identical as to all relevant terms, and also because the challenged practices of charging customers multiple NSF Fees for a single item or transaction are uniform for Plaintiff and the Class. Accordingly, in pursuing his own self-interest in litigating his claims, Plaintiff will also serve the interests of the Class.

53.  *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Plaintiff and his counsel intend to prosecute this action vigorously.

54.  *Predominance and Superiority:* The matter is properly maintained as a class action under Rule 23(b)(3) because the common questions of law or fact identified herein and to be identified through discovery predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter. Because the injuries suffered by the individual Class members are relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and the Class will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

55. Plaintiff anticipates the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class members. Upon information and belief, Defendant's own business records and/or electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiff anticipates the use of additional media and/or mailings.

## COUNT I
## BREACH OF CONTRACT

56. Plaintiff re-alleges and incorporates all previous paragraphs herein.

57. Plaintiff and Defendant contracted for checking account services, as embodied in Account Documents.

58. Defendant contracted that it would charge its customers, including Plaintiff and the Class, one NSF Fee for a single item or transaction, but in actuality, charged Plaintiff and the Class multiple NSF Fees for a single item or transaction.

59. Contrary to the Account Documents and Defendant's representations, Defendant withdrew funds from Plaintiff's accounts, and the accounts of Class members, in a manner not contemplated by the Account Documents or disclosed by Defendants.

60. Defendant breached its contracts with Plaintiff and the Class through its overdraft policies and practices as alleged herein.

61. Plaintiff and members of the Classes performed all of the obligations on them pursuant to the Account Documents.

62. Plaintiff and members of the Class sustained monetary damages as a result of each of Defendant's breaches in an amount to be proven at trial.

## COUNT II

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

63. Plaintiff re-alleges and incorporates all previous paragraphs herein.

64. Plaintiff and the Class entered into a contract with Defendant governing NSF Fees, which have been identified herein as the Account Documents. The contract was drafted by and is binding upon Defendant.

65. In the Account Documents, Defendant promised it would only assess NSF Fees for a single item or transaction and never contemplated multiple NSF Fees for a single item or transaction.

66. Good faith is an element of every contract pertaining to the assessment of NSF Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain with neither party doing anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

67. The material terms of the Account Documents include the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

68. Plaintiff and the Class performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the Account Documents, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

69. Defendant breached the implied covenant of good faith and fair dealing based on its practices of assessing multiple NSF Fees on a single item or transaction and failing to provide an accurate description and disclosure of how it would actually enforce its NSF Fee policy. In so doing, and in implementing its abusive policy for NSF Fees to increase and maximize overdraft fees it would receive, Defendant executed a contractual obligation in bad faith, depriving Plaintiff and the Class of the full benefit of the contract.

70. As a proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have been damaged in an amount to be proven at trial and seek relief as set forth below.

## PRAYER FOR RELIEF

71. WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests the Court enter an Order:

    a. Certifying the proposed Class;

    b. Declaring Defendant's NSF Fee policies and practices alleged in this Complaint are wrongful, unfair, and unconscionable;

    c. Enjoining Defendant from charging more than one NSF Fee for a single item or transaction;

    d. Enjoining Defendant from continuing to misrepresenting its true NSF Fee processing policies and practices;

    e. Granting restitution of all NSF Fees paid to Defendant by Plaintiff and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

    f. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

g. Awarding actual and/or compensatory damages in an amount according to proof;

h. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

i. Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

j. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable as a matter of right.

Dated:  February 28, 2020                     Respectfully submitted,

/s/ Jeffrey N. Catalano, Esq.
Jeffrey N. Catalano, Esq. (BBO#567798)
**TODD & WELD LLP**
One Federal Street, Flr. 27
Boston, MA 02110
Tel:  (617) 720-2626
Fax: (617) 227-5777


Jacob R. Rusch (MN Bar No. 031892)
Timothy J. Becker (MN Bar No. 0256663)
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Tel:  (612) 436-1800
Fax: (612) 436-4801
jrusch@johnsonbecker.com
tbecker@johnsonbecker.com
*Class Counsel for Plaintiff*

*Pro hac vice pending

15

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on February 28, 2020.

/s/ Jeffrey N. Catalano, Esq.

4843-6943-5318, v. 1